UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEX CHADWELL, <br><br> Plaintiff, <br><br> v. <br><br> THE OFFICE OF REPRESENTATIVE TROY NEHLS, U.S. HOUSE OF REPRESENTATIVES, <br><br> Defendant. | Case No. 1:24-cv-02392 (TNM) |

## MEMORANDUM ORDER

Alex Chadwell contends the Office of Congressman Troy Nehls ("the Office") discriminated against him because of his sexual orientation. He sued the Office, which moves to transfer the case to the Southern District of Texas. The Office has a presence in Texas, and Chadwell and most witnesses live there. Texas is also where most of the relevant events occurred. So the Court transfers the case there.

### I.

Chadwell used to work for Representative Nehls. Compl. ¶¶ 2–5.[1] After working on Nehls' election campaign, Chadwell first joined the congressman's Washington, D.C., office in January 2021. *Id.* ¶¶ 10–12. Nehls was unaware that Chadwell is gay. *Id.* ¶ 9. Early in Chadwell's tenure at the D.C. office, Chief of Staff Robert Schroeder began to suspect Chadwell was gay and allegedly started directing discriminatory comments at him. *Id.* ¶¶ 15–19. Schroeder also withheld certain job training from him. *Id.* ¶ 20. These tensions led Chadwell to request a transfer to Nehls's district office in Texas to serve as a field representative. *Id.* ¶ 21.

---

[1] The Court accepts the facts in Chadwell's Complaint as true when evaluating venue. *See Wood v. United States*, 961 F.2d 195, 196 (Fed. Cir. 1992).

He started his new position in May 2021, and worked as a field representative in Texas until October 2023. *Id.* ¶¶ 24, 52.

The move was not the fresh start Chadwell had hoped for, and the tension continued. *Id.* ¶ 28. For instance, he says Schroeder and Nehls repeatedly "questioned why—if he was a 'normal man'—[he] was not romantically interested in" Nehls' daughter. *Id.* ¶ 29. Another time, Nehls supposedly grew upset that an employee was watching an LGBTQ+-related television show at work. *Id.* ¶ 30. And a supervisor in the Texas office kept an LGBTQ+ poster in his officer "solely for the purpose of mocking the gay community"—which he did regularly in front of Chadwell. *Id.* ¶¶ 27, 31. When Chadwell fell ill in January 2022, Schroeder suggested in a phone conference that Chadwell had gotten sick because he was "kissing a lot of boys." *Id.* ¶ 32.

Then, in August 2022, Nehls asked an employee in the Texas office to determine whether Chadwell was gay. *Id.* ¶ 34; *see also* Mot. Transfer at 2 n.3. After asking around, the employee concluded that Chadwell was indeed gay and his supervisor in Texas was covering it up. Compl. ¶¶ 25, 34. With Chadwell's sexuality confirmed, Nehls allegedly began ostracizing him and avoiding him both socially and at work-related events. *Id.* ¶¶ 35–38. Schroeder likewise curtailed Chadwell's opportunities to attend training and other events after news of his sexuality broke. *Id.* ¶ 38. The Office started paring down Chadwell's job responsibilities and stopped him from accompanying Nehls to various events around Texas. *Id.* ¶ 39.

In January 2023, the Office hired a new field representative—a straight man. *Id.* ¶ 40. Schroeder tasked Chadwell with training the new field representative and, though Chadwell did not know it at the time, he was training his replacement. *Id.* After the Office passed Chadwell over for a promotion in March 2023, Schroeder told him that it was time to start exploring new

job opportunities. *Id.* ¶¶ 42–43. Chadwell eventually took another job in October 2023 and, on his way out, Schroeder told Chadwell that this had come about because their "lifestyles" did not align. *Id.* ¶ 52. Chadwell filed an administrative complaint with the Office of Congressional Workplace Rights, followed by this lawsuit. *Id.* ¶¶ 6–7; *see also* 2 U.S.C. § 1401(b)(1) (administrative claims are a prerequisite to suing).

The Office now moves to transfer the case to the Southern District of Texas. Mot. Transfer, ECF No. 7. Chadwell opposes the transfer. Opp'n, ECF No. 9. It is to this issue that the Court turns.

## II.

Courts have discretion to transfer cases to other districts if warranted in the interests of justice and convenience to the parties and witnesses. 28 U.S.C. § 1404(a). Venue transfer is a two-step process. First, "the district court must ask whether the case might have been brought in the destination venue." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (cleaned up). Second, "the district court must weigh" a variety of private and public interest factors "to determine whether the destination venue is clearly more convenient than the venue chosen by the plaintiff." *Id.* (cleaned up). This is a case-specific evaluation, and courts must not "apply these factors mechanically." *Montgomery v. Barr*, 502 F. Supp. 3d 165, 174 (D.D.C. 2020). Transfer is discretionary, so it is not contingent "on the initial forum[] being 'wrong.'" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.,* 571 U.S. 49, 59 (2013).

## III.

The Southern District of Texas is the better venue for this case because it involves a Texas resident's employment conditions in Texas. *See* Compl. at 1 (listing a Texas address for Chadwell). Chadwell could have brought this case there because it is his home district and most

3

of his claims originated there.  *See* 28 U.S.C. § 1391(b), (e) (venue is proper where "a substantial part of the events . . . giving rise to the claim occurred" or where "the plaintiff resides if no real property is involved").  Because venue is proper in Texas, the Court next considers whether the relevant private and public interests favor transfer.

### A.

Consider first the private-interest factors.  These "include the parties' choices of forum, where the claim arose, the convenience of the parties and witnesses, and the ease of access to sources of proof."  *Montgomery*, 502 F. Supp. 3d at 174 (cleaned up).

Chadwell wants to litigate his case here in Washington and says his choice is entitled to deference.  Opp'n at 1, 5–6.  The Office wants to litigate in Texas where Chadwell lives and where the Texas office is located.  Mot. Transfer at 1.  It contends that Washington's connection to this case is so tenuous that Chadwell's forum selection gets no deference.  Reply, ECF No. 11, at 2–6.  Courts typically "accord[] substantial deference" to the "plaintiff's choice of forum."  *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 (D.D.C. 2000).  But this deference can be reduced or wholly stripped away.  "[S]ubstantially less deference is warranted when the forum preferred by the plaintiff is not his home forum."  *Id.*  Deference is similarly reduced when the plaintiff's chosen forum has "no meaningful ties to the controversy, and lessened further still" when the plaintiff's home forum "has substantial ties to . . . the subject matter of the lawsuit."  *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 31–32 (D.D.C. 2013).

The nexus between this case and Washington is weak, but not so paper-thin that the Court will completely jettison deference to Chadwell's selection.  Yet the deference Chadwell is entitled to is substantially reduced because the Office wants to litigate in Chadwell's home forum which, as the Court discusses below, has strong ties to the case.  Giving the proper weight to

Chadwell's forum choice, transfer is still appropriate because the remaining factors outweigh his preference.

The other factors point uniformly in favor of transfer. Chadwell's claim arose mainly in the Southern District, not here. He alleges a hostile work environment, Compl. ¶ 1, and his work environment was in Texas for most of his employment. The specific incidents that fomented the alleged hostility happened mainly during his 27 months of employment in Texas, not the six months he spent here. *See* Compl. ¶ 24 *et seq*. For example, it was not until Chadwell moved to Texas that the Office confirmed he was gay and Nehls began distancing himself from Chadwell. *Id.* ¶ 35. He maintains he was excluded from accompanying the congressman "on trips and functions within the [congressional] District" in Texas too. *Id.* ¶ 39. And he allegedly experienced discriminatory comments from a Texas coworker; unknowingly trained his own replacement in Texas; and was passed over for promotion in Texas. *Id.* ¶¶ 31, 38, 40, 42. Though the first signs of trouble for Chadwell started in Washington, the bulk of the case played out after his move to Texas. Transfer is thus appropriate because "the material events that form the factual predicate of a plaintiff's claim did not occur in his chosen forum." *Tower Labs, Ltd. v. Lush Cosms. Ltd.*, 285 F. Supp. 3d 321, 326 (D.D.C. 2018).

Chadwell disagrees. He does not assert that venue is improper in Texas but instead argues that Washington is the preferable venue. *See* Opp'n at 5 (omitting analysis of whether venue is proper in Texas). According to Chadwell, many of Schroeder's comments were conveyed through phone calls from here, which firmly plants the events of the case here. Opp'n at 11. But in support, he cites to personal jurisdiction cases. *See id.*; *see also* Reply at 9 (distinguishing Chadwell's cases for this reason). Under these cases, the Court has personal jurisdiction over Schroeder because he made phone calls from here. But this dispute is over

venue, not the Court's threshold jurisdiction to hear Chadwell's case. Both parties agree on that. The mere existence of jurisdiction does little to further Chadwell's position because the relevant question for venue is not whether this Court *can* hear the case, but whether it *should*. *See* 28 U.S.C. § 1404 (premising transfer on "the convenience of parties and witnesses, [and] the interest of justice").

The statute of limitations further undermines Chadwell's attempts to frame this as a Washington-based case. Chadwell's suit is limited to the allegations he had raised in his administrative claim. *See* 2 U.S.C § 1401(b)(1). He filed his claim on April 10, 2024, meaning it properly included any allegations from October 13, 2023, onward. Compl. ¶ 6; *see also* 2 U.S.C § 1402(d) (claims must be filed within 180 days of the challenged conduct). But Chadwell left Washington in 2021, years before he filed his administrative claim. Compl. ¶ 24. So the core facts of Chadwell's administrative claim—and by extension, his lawsuit—happened after his move to Texas.[2]

More, as the Office points out, the Southern District is further implicated because it is where Chadwell experienced the harms of the allegedly hostile work environment. Mot. Transfer at 7. Factually, the "damages and injuries, including . . . past and future lost wages, [and] lost benefits of employment" occurred in Texas. Compl. ¶ 65. Chadwell counters that "the situs of the injury is Washington, where the decision[s]" that harmed him were "made," not where he felt the effects. Opp'n at 13. But he again relies on an inapposite personal jurisdiction case that does not speak to venue considerations. *See id.* (citing *Helmer v. Doletskaya*, 393 F.3d

---

[2] The Court makes no finding about whether any of Chadwell's allegations are in fact time barred. That question is not before the Court and can be resolved post-transfer if needed.

6

201 (D.C. Cir. 2004)).  Even if some harms were launched from Schroeder's D.C.-based phone, they were experienced by Chadwell in his Texas-based work environment.

Although some of Schroeder's behavior originated in Washington, the evidentiary fulcrums are in Texas.  This is reflected by the location and availability of the witnesses and evidence.  Chadwell lives in Texas, as do Nehls and most of the staff of the Office who allegedly mistreated Chadwell.  "Venue is convenient where parties are located" and all but one likely witness resides in Texas.  *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 333 (D.D.C. 2020).  Requiring most of the witnesses to travel from Texas to here would present considerable inconvenience.  Though "mere inconvenience to the witnesses alone is not enough to warrant transfer," *Sec. & Exch. Comm'n v. RPM Int'l, Inc.*, 223 F. Supp. 3d 110, 117–18 (D.D.C. 2016), it does still support transfer.  *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010), *as amended* (Jan. 13, 2011).

The only prospective witness outside of Texas is Schroeder, who lives in Virginia.  Opp'n at 17.  Chadwell worries that Schroeder may be beyond the reach of a subpoena should this litigation play out in Texas.  *Id.* at 17–18.  But the Office represents that Schroeder is "willing to travel to Texas" for this case.  Reply at 10.  Absent evidence to the contrary—which Chadwell has not offered—the Court "assume[s] that witnesses will voluntarily appear." *Bederson v. United States*, 756 F. Supp. 2d 38, 49 (D.D.C. 2010) (cleaned up).

The Office also maintains that Schroeder "would be bound to appear in Texas if subpoenaed."  Reply at 11.  The Court agrees.  A subpoena is proper in any location that Schroeder "is employed, or regularly transacts business in person," in his capacity as "a party's officer."  Fed. R. Civ. P. 45.  He "regularly travels to Texas . . . for work" in his capacity as the

Office's chief of staff, Reply at 10, so he can likely be subpoenaed there. Thus, the location of the witnesses and evidence favors transferring the case to Texas.

To recap, Texas is Chadwell's home forum and has "substantial ties" to the case, so the Court gives only limited deference to Chadwell's forum choice. *Chariots for Hire*, 918 F. Supp. 2d at 31. The Southern District is also a more convenient location with better access to evidence: The parties and most witnesses reside there, Chadwell's work environment was there, and most of the alleged discrimination and corresponding harm happened there. So overall, the private-interest factors favor transfer.

**B.**

Next are the public-interest factors. These "include the transferee court's familiarity with governing law, the relative congestion within the transferor and transferee courts, and the local interest in deciding local controversies at home." *Montgomery*, 502 F. Supp. 3d at 174 (cleaned up). The parties agree that the first two public-interest factors are not relevant and do tip the scales either way. Mot. Transfer at 11–12; Opp'n at 20–21.

But the parties diverge on which venue has a stronger local interest in the case. Chadwell asserts that this district has a stronger interest because "the bulk of the discriminatory conduct occurred and/or originated here." Opp'n at 21. So, he reasons, "the District of Columbia has a strong interest in addressing 'harms [that] were allegedly perpetrated by parties living or working within the District of Columbia.'" Opp'n at 22 (quoting *Vasser v. McDonald*, 72 F. Supp. 3d 269, 283 (D.D.C. 2014)).

Yet saying that this case arose in Washington does not make it so. Chadwell and the witnesses live in Texas, and Texas is where he spent most of employment with the Office. So "[t]he gravamen of this case—the employment practices of a [Texas] politician who employs

[Texas] residents in his office in [Texas]—paradigmatically implicates local interests" in Texas. *Pope v. Off. of Congressman Doug Lamborn*, 2021 WL 4192029, at *4 (D.D.C. Sept. 15, 2021). Washington does not lack interest in this case, but the balance favors the "strong local interest" that Nehls' Texas constituents have "in how their Congressman operates his District Office and handles disputes with his [Texas]-based employees." *Id.*; *see also Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 56 (D.D.C. 2012) (A matter is local when "a clear majority of the operative events took place within the [district]."). So Texas has a far stronger local interest in this case than Washington.

After evaluating the public and private interests, the Court finds that "the destination venue" in Texas "is clearly more convenient than the venue chosen by" Chadwell. *Planned Parenthood Fed'n of Am.*, 52 F.4th at 630. The Court will thus transfer the case there.

## IV.

For these reasons, it is

**ORDERED** that the Defendant's [7] Motion to Transfer Case is **GRANTED**; and it is further

**ORDERED** that this case be transferred to the U.S. District Court for the Southern District of Texas, Houston Division.

**SO ORDERED.**

The Clerk of Court is directed to close this case.

Dated: May 5, 2025

TREVOR N. McFADDEN
United States District Judge